STATE, EX REL. JOHN BAMFORD ET AL., v. JOSEPH C. HOLLINSHEAD, RESPONDENT.

1. Where an act of the legislature requires the county clerk to pay the fees of his office to the county collector, *mandamus* will not issue at the suit of a tax-payer to enforce such payment.
2. The right of action is vested in the collector, and it is his duty to collect the sum due the county.

Application for *mandamus.*

Argued at June Term, 1885, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the relators, *J. J. Crandall.*

For the defendant, *Thos. B. Harned.*

The opinion of the court was delivered by

VAN SYCKEL, J. The relators are tax-payers of the county of Camden, who allege that the defendant, who is the county clerk of Camden county, has, in virtue of his office, collected certain moneys, which it is his duty to pay to the county collector of said county.

The respondent admits that he has in hand the sum of $2000, which the act of 1880, page 247, as amended by the act of 1884, page 58, requires him to pay to the county collector. He neglects and refuses to pay this sum to the collector, and in defence of his refusal so to do alleges that the said acts of the legislature are void and unconstitutional.

To enforce obedience on the part of the county clerk to the statutory requirement, the relators obtained a rule to show cause why a writ of *mandamus* shall not issue to the clerk, and now ask to make said rule absolute.

The general rule is that a private individual applying for a writ of *mandamus* must show in himself a specific legal

right, and the want of a specific legal remedy. If granted, it must be in pursuit of or protection for some particular right which he holds independent of that which he has in common with the public at large. *Heffner* v. *Commonwealth*, 28 *Penna. St.* 108 ; *Sawyer* v. *County Commissioners*, 25 *Maine* 291 ; *Delbridge* v. *Green*, 29 *Mich.* 121 ; *Wood on Mand.* 96 ; *High on Extr. Rem.*, § 33.

It may be difficult to reconcile all the adjudicated cases in this state in conformity to this rule.

In *State* v. *Griscom*, 3 *Halst.* 136, a private applicant had *mandamus* to the township committee to assign to overseer divisions of a public highway.

On a like application *mandamus* issued to the overseer to open the road in *State* v. *Holliday*, 3 *Halst.* 205.

A citizen sued out *certiorari* to set aside action of surveyors vacating a highway in *State* v. *Snedeker*, 1 *Vroom* 80.

In *State* v. *Common Council of Rahway*, 4 *Vroom* 110, on the application of a voter, a writ of *mandamus* was granted to compel council to appoint a special election to fill a vacancy.

In *State* v. *Tolan*, 4 *Vroom* 195, an inhabitant of a city had leave to file a *quo warranto* to test the legality of the election of aldermen.

In *State* v. *Bronson*, 6 *Vroom* 468, where commissioners had been appointed under a legislative act to lay out roads and public parks in certain parts of Union county, and to provide for the expenses thereof, it was held that a party, though a land-owner and tax-payer within the parts designated, could not call in question the proceedings of the commissioners unless the natural and necessary consequence of their acts would subject him to taxation, or injuriously affect and interfere with his property or legal rights.

Where the common council of the city of Trenton, without authority granted to an individual the privilege of laying a railroad track across the public street this court refused, in *State, Montgomery, pros.*, v. *Trenton*, 7 *Vroom* 79, to permit a

citizen who sustained no damage peculiar to himself to inter-
fere by *certiorari*.

In State *v.* Williams, the view of this court was that every
citizen has a right to the inspection of public documents, pro-
vided he shows the requisite interest therein, and therefore
a *mandamus* was properly awarded to enforce the exercise of
the right.

In the road cases and in the case last cited, the relator, with-
out the aid of the extraordinary remedy, would have been
deprived of rights which he was entitled personally to enjoy
—the use of the highway and the inspection of the record.

It will be observed that the learned justice who delivered
the opinion of the court in the Rahway case in 4 *Vroom*, also
pronounced the opinion in the later case in 6 *Vroom*, and con-
curred in the view of the court in 7 *Vroom*.

The most extreme case which can be found will not justify
intervention by the relators in the case at bar.

The legislative enactment which is made the basis of this
application vests in the county collector the exclusive right to
sue for the fees in controversy.

He is not a party to this suit, and cannot be concluded by
the judgment of the court in this proceeding. The relators
therefore are mere volunteers; they cannot be permitted to
vex the respondent with a suit, the issue of which will fur-
nish no bar to a like prosecution by the real party in interest.
In a litigation where the judgment of the court can have no
conclusive force, an opinion cannot be expressed as to the con-
stitutionality of acts of the legislature. There is an ample
remedy to which resort may be had. The county collector
may persist in his neglect to prosecute for the recovery of the
claim, but he will do so in peril of conviction for official mis-
conduct. The corrupt intent which must be present to render
the neglect of official duty indictable may be found in the
fact that the statute expressly gives him a right of action,
which he refuses to prosecute with a knowledge that the clerk
withholds moneys due to the county.

Against such a criminal prosecution his suggestion or belief

that the positive law is unconstitutional may furnish a slender defence. In that aspect of the case the law is most forcibly expressed by the Chief Justice in *State* v. *Kelsey*, 15 *Vroom* 1, 30 : "Statutes are not voidable even by judicial decision, except upon very satisfactory grounds; and nothing short of almost absolute certainty with respect to the entire invalidity of an act would afford an excuse to an officer for his refusal to execute it. Any less stringent rule of official conduct in such a respect would be a public evil of very great magnitude. For a financial agent of the government to refrain from putting into operation a legislative policy, plainly evinced by a formal enactment, acting on his own judgment, unassisted by any judicial tribunal, would, unless in an instance of such clear illegality that the flaw would be at once admitted by every enlightened mind, be inconsistent with every dictate of law and public policy."

How much time must elapse before criminal negligence can be imputed to a public officer is not now a pertinent subject of inquiry. The fact that when found to exist it is punishable, shows that there is another remedy than that now sued for by the relators. The writ of *madamus* must be denied, but it should be without costs.